## WALTER JONES v. THE STATE.

### No. 243.    Decided December 15, 1909.

Rehearing denied February 2, 1910.

**Burglary—Sufficiency of the Evidence.**

See opinion for evidence held sufficient to support a conviction of burglary of a private residence.

Appeal from the District Court of Bowie.    Tried below before the Hon. P. A. Turner.

Appeal from a conviction of burglary of a private residence; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On insufficiency of the evidence:    Burrell v. State, 50 Texas Crim. Rep., 386; Bird v. State, 49 Texas Crim. Rep., 96, 90 S. W. Rep., 651; True v. State, 48 Texas Crim. Rep., 631, 89 S. W. Rep., 1066.

*John A. Mobley,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of burglary of a private residence and his punishment assessed at five years confinement in the penitentiary.

The following is a synopsis of the evidence:    Marshall Northcott, a witness for the State, testified that he owned a building located in Texarkana, Texas, which was occupied by the Texarkana Livery Company; that said building was a three-story building; that he used and occupied as his private room and residence one of the small rooms on the second floor of the building, but the remainder of said building was used for the purpose of storing wagons, buggies, horses, feed and other things necessary to the carrying on of a livery business; that the room which he occupied was furnished as a bed-room, and that he slept there, kept his personal effects there and had his meals served to him in said room.    That on the night of April 17, 1909, at about 9 o'clock p. m. he went to his room to go to bed; that when he left his room the door was closed, but not locked; that the door was fastened with a latch and when he left the window shades were pulled up; that upon going to his room at said time he discovered appellant under his bed and ordered him out, at the same time asking him what he was doing there, to which appellant replied, "I am waiting for Uncle Charlie;" that he cursed appellant and called for his partner, Mr. Scott, who came upstairs and cursed appellant and struck him over the head with a bottle; that appellant ran out and leaped down the elevator shaft and ran off.    He also states that they afterwards found appellant's coat, hat and shoes in the room near the head of the stairs and that a bunch of keys was in his hat.    That he missed no property

from the room, except a pistol from one of the dresser drawers, which he had not seen for two or three weeks prior to the time of the alleged commission of the offense; that he did not consent for appellant to enter his room, nor did anyone else except Roy McKinley, a negro who cleaned his room for him; that he had about seventy-five dollars in his pocket, but did not know whether appellant knew he had money or not. On cross-examination he stated that there was a man working at the stable by the name of Gaines, an uncle of appellant; that buggies were washed on the second floor of the building; that the negro boys who washed the buggies and worked around the stable had access to the second floor of the building, but not his room; that anyone on the second floor of the building could enter his room by turning a knob and pushing it open. Roy McKinley, another witness for the State, testified that he cleaned up Mr. Northcutt's room, and that he did not consent for appellant to go in the said room on the date alleged, 17th of April; that he had noticed the pistol in the dresser-drawer two or three weeks before, but did not know who took it; that he saw appellant around the livery stable that afternoon and if he was drunk he could not tell it. The constable, Nelvin Anderson, testified that he arrested appellant about 11 o'clock of the night mentioned; that he asked him if he was not the negro who had been in Mr. Northcott's room, which appellant denied. Charlie Gaines, a witness for defendant, testified that he saw appellant around the stables that afternoon and that he noticed that he was either sick or drunk or something was the matter with him; that he told him to get up, and he got up off the express wagon upon which he was lying and went around and lay down on a bale of hay; that appellant was his nephew, but he did not give him permission to go into Mr. Northcott's room; that witness has no right to go in said room; that he did not tell appellant to wait for him. Appellant testified that he was a train porter on one of the T. & P. passenger trains; that he was paid off on the day in question and spent his money around Texarkana in saloons.; that in the afternoon he was drunk and sick; that he went to sleep on the seat of a wagon and his uncle made him get up; that one of the boys asked him to help him wash a buggy; that he went upstairs with the boy; that he had on his good clothes and pulled them off and put on some old shoes; that he had some keys with which he unlocked the doors of the different cars, and laid them down with his hat, shoes and coat; that he just fooled around upstairs, laid down awhile and sat down awhile; that he did not know what become of the boy who went up there with him and did not remember going to Mr. Northcott's room; that he waked up under the bed when Mr. Northcott holloed at him, and when Mr. Scott hit him with the bottle he ran; that he was just drunk; that he took nothing out of the room and did not go in there with that intention; did not know how he happened to go in there. On cross-examination he stated that he did not know the boys'. name who went up there with him to wash the buggy; that he did not wash

any buggy; that he did tell Mr. Anderson he was not the man who went in the room; that he did not know Mr. Anderson was an officer, but was afraid to own up that he was the man who went in the room. The witness Scott stated on rebuttal for the State that he was a partner with Northcott and remembered the event of the appellant being found in Northcott's room; that they kept a negro around the stable to wash buggies, but he always got through between 12 and 1 o'clock in the afternoon; that he did not think any buggies were washed on the evening mentioned.

Appellant complains that this testimony is insufficient to sustain the conviction. We believe, after a careful consideration of same, that the specific intent to commit burglary is properly suggested by the evidence. While appellant's testimony and that of his witnesses contravenes the State's case, yet the evidence is sufficient to support the finding of the jury. We accordingly hold that the evidence is sufficient and the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 2, 1910.—Reporter.]